IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JUDITH A. ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:11cv631-WC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.   INTRODUCTION**

Plaintiff, Judith A. Ross, applied for supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. Her application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which she found Plaintiff not disabled at any time through the date of her decision. Tr. 25. The Appeals Council rejected Plaintiff's request for review of the ALJ's decision. Tr. 1-5. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 6); Def.'s Consent to Jurisdiction (Doc. 5). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-one years old at the time of the hearing before the ALJ. Tr. 37. Plaintiff graduated high school.  Tr. 37-38.  Plaintiff's past relevant work experience was as a "sandwich maker," "cashier," "sales attendant," "bar attendant," "short order cook," and "store laborer."  Tr. 24.  Following the administrative hearing, and employing the five-step process, the ALJ found Plaintiff "has not engaged in substantial gainful activity since October 16, 2008, the application date."  (Step 1) Tr. 15.  At Step 2, the ALJ found that Plaintiff suffers from the following severe impairments:  "bipolar disorder, depression, anxiety, diabetes mellitus, chronic obstructive pulmonary disease (COPD), and alcohol dependence."  Tr. 15.  The ALJ then found that Plaintiff's "impairments, including the substance use disorder, meet sections 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d))."  (Step 3) Tr. 16.  The ALJ determined that "[i]f the claimant stopped the substance abuse, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments."  Tr. 18.  However, the ALJ found that "[i]f the claimant stopped the substance abuse, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in  20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d))."  *Id.*  Next, the ALJ found that

> If the claimant stopped the substance abuse, the claimant would have the residual functional capacity to perform light work . . . except the claimant could perform simple, routine, repetitive tasks, she could have brief and superficial contact with the public, and she could perform work activity in a

well-ventilated area. She must avoid concentrated exposure, meaning exposure of no more than five minutes, to temperature extremes, odors, gases, and fumes. The individual could work in close proximity to others but would need to work independently, and she could adapt to minimal changes in work the setting.

Tr. 20. The ALJ then concluded that "[i]f the claimant stopped the substance abuse, the claimant would be unable to perform past relevant work." (Step 4) Tr. 23. The ALJ also found that "[i]f the claimant stopped the substance abuse, the claimant would not have the residual functional capacity to perform the full range of light work." Tr. 25. At Step 5, the ALJ found that, "[i]f the claimant stopped the substance abuse, considering the claimant's age, education, work experience, and residual functional capacity," and after consulting with a VE, "she would be capable of making a successful adjustment to work that exists in significant numbers in the national economy." Tr. 25. The ALJ identified the following occupations as examples: "garment sorter," "laundry worker," "cafeteria attendant," and "assembler of small products." Tr. 25. Accordingly, the ALJ determined that "[b]ecause the claimant would not be disabled if she stopped the substance use (20 CFR 416.920(g)), the claimant's substance use disorder is a contributing factor material to the determination of disability (20 CFR 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of this decision." Tr. 25.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents three issues for this Court's consideration in review of the ALJ's

decision: 1) whether "[t]he Commissioner's decision should be reversed because there is absolutely no support for the ALJ's physical Residual Functional Capacity (RFC) assessment as the record is devoid of any physical RFC assessments provided by a physician"; 2) whether "[t]he Commissioner's decision should be reversed because the ALJ committed reversible error in failing to accord adequate weight to the opinion of Ms. Ross' treating psychiatrist, Dr. Lopez"; and 3) whether "[t]he Commissioner's decision should be reversed because the ALJ committed reversible error in relying on the conclusions of a consulting psychologist who only examined Ms. Ross once." Pl.'s Br. (Doc. 11) at 6.

## V. DISCUSSION

### A. *Whether the ALJ properly determined Plaintiff's RFC.*

Plaintiff challenges the ALJ's RFC determination, arguing "there is absolutely no support for the ALJ's physical [RFC] assessment as the record is devoid of any physical RFC assessment from any physicians whatsoever." Pl.'s Br. (Doc. 11) at 6.[5] Defendant contends "the ALJ comprehensively discussed the medical and non-medical evidence

---

[5] Plaintiff also contends "[t]he only RFC assessment contained in the record is that of Ms. Sandra H. Knox, a Single Decision Maker" and argues "agency policy requires ALJs to evaluate SDM RFC assessments as adjudicatory documents only, and not accord them **any** evidentiary weight when deciding cases at the hearing level." Pl.'s Br. (Doc. 11) at 8 (emphasis in original). A review of the ALJ's decision reveals that she did not consider the SDM's RFC assessment in reaching a determination as to Plaintiff's RFC. For example, the ALJ placed environmental limitations while the SDM's assessment indicated "none." Thus, Plaintiff's argument is due to fail.

from the record and utilized such in rendering her [RFC] assessment" and therefore, "the ALJ's [RFC] assessment absent Plaintiff's alcohol abuse was consistent with the favorable objective medical evidence with respect to her physical disorders, and response to treatment for affective and anxiety disorders, with respect to her mental disorders." Def.'s Br. (Doc. 12) at 10.[6]

The problem for Plaintiff is that she has not demonstrated, nor does she even allege, that she has any further physical limitations than those in her RFC. The Court finds that the physical limitations found by the ALJ meet or exceed the limitations claimed by Plaintiff or shown by Plaintiff's medical records. Although the ALJ is "charged with developing a fair and full record" and "bound to make every reasonable effort to obtain from the claimant's treating physician(s) all the medical evidence necessary to make a determination," the burden is on Plaintiff to prove that she is disabled. *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002).

Moreover, the Court of Appeals for the Eleventh Circuit has held that the ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about Plaintiff's functional capacity. *See, e.g.*, *Green v. Soc. Sec. Admin.,* 223 F. App'x 915, 923 (11th Cir. 2007) (unpublished opinion) (finding the ALJ's RFC assessment supported by substantial evidence where he

---

[6] Defendant also points out, "Plaintiff even reported that her condition did not affect her abilities to sit, kneel, or climb stairs (Tr. 196), and that she possibly could lift 15 pounds possibly [sic] (Tr. 46-47)." Def.'s Br. (Doc. 12) at 10.

rejected treating physician's opinion properly and formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician); *see also Dailey v. Astrue*, 2012 WL 3206482, at *9 (S.D. Ala. July 18, 2012) ("an ALJ may reach an RFC determination in appropriate circumstances on a record that does not include an RFC opinion from a treating or examining medical source." (citing *Griffin v. Astrue,* 2008 WL 4417228, at *10 (S.D. Ala. Sept. 23, 2008) ("While Plaintiff asserts that a physician's RFC assessment was required, she has not demonstrated that the ALJ did not have enough information to enable him to make a RFC determination, nor has she pointed to any medical evidence which suggests that the ALJ's RFC assessment is incorrect."))).

The Court also finds that the ALJ's RFC assessment is supported by substantial evidence. In reaching her determination regarding Plaintiff's RFC, the ALJ noted Plaintiff was diagnosed with diabetes mellitus in April 2008; however, she testified that she had not been prescribed insulin. Tr. 20. The ALJ concluded "the evidence shows that when the claimant complies with her treatment, her diabetes is well controlled." Tr. 21.

In October 2008, Plaintiff was diagnosed with bipolar disorder, depression, alcohol dependence, PTSD, and personality disorder. However, Plaintiff was not compliant with her mental health treatment. For example, while Plaintiff "stated that she could not afford to take her medications, . . . Dr. Hicks noted that she was able to afford

the beer she drinks daily as well as the cigarettes she smokes constantly." Tr. 22. Thus, the ALJ concluded "[t]he overall evidence shows that the claimant's symptoms are controlled with medication." Tr. 22. Plaintiff noted she "'snapped at people' until she got on different medications," her husband indicated that "without the meds, the claimant is unhappy," and Plaintiff "told her therapist at Spectra Care that she was feeling better now that she was taking her medications." Tr. 22.

In January 2010, Plaintiff was diagnosed with COPD; however, "the evidence shows [Plaintiff] still smokes cigarettes" and she "testified that she has not required a nebulizer in years." Tr. 21. Plaintiff "has had no emergency room visits or hospitalizations for shortness of breath" and there is no evidence that her "preventative medications are not controlling her diagnosed COPD." Tr. 21.

The ALJ noted that Plaintiff's daily activities "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 23. The ALJ further noted Plaintiff reported doing her chores, taking care of personal needs, driving, cooking dinner, taking care of her husband by cooking and cleaning for him, grocery shopping every week, reading at least three hours weekly, and her husband reported that Plaintiff "does not have problems concentrating or remembering." Tr. 23.

Reviewing the medical evidence on the record, the ALJ gave "significant weight" to the opinion of Dr. Jacobs, who performed a consultative psychological examination in October 2007. Dr. Jacobs opined that Plaintiff "is capable of functioning independently

and managing financial resources for her own best interest." Tr. 21. The ALJ found Dr. Jacobs's opinion consistent with the record "because during times when the claimant's alcohol abuse is in remission and she is taking her medications, the evidence shows that the claimant's symptoms from her mental impairments are mild to moderate with little effect on her ability to perform daily activities or work activity." Tr. 21. The ALJ also gave "great weight" to Dr. Jordan's opinion, a consultative examination dated June 7, 2010. The ALJ noted Dr. Jordan opined that Plaintiff's "symptoms would be less than marked in those areas [of bipolar disorder, depressed mood, and alcohol abuse] if the claimant stopped abusing alcohol (Exhibit 15f, page 6)." Tr. 23. The ALJ assigned only "some weight" to the opinion of Dr. Lopez, Plaintiff's psychiatrist, because she determined there was no evidence that Dr. Lopez had "an ongoing treatment relationship" with Plaintiff and Dr. Lopez failed to consider Plaintiff's substance abuse. *See* infra Section B. The ALJ gave "little weight" to Dr. Bendinger's January 2010 opinion that Plaintiff "is unable to work due to shortness of breath" related to COPD "because it is not supported by the longitudinal medical evidence" and because there is no evidence that Dr. Bendinger treated Plaintiff's COPD "other than one time" Tr. 21.

    Accordingly, based on the evidence on the record, the ALJ concluded:

> [T]he evidence suggests that both the claimant's physical and mental symptoms are controlled with medications. . . . The claimant also has a work history that demonstrates her ability to perform simple routine, repetitive tasks, and her ability to interact appropriately and concentrate. The record reveals that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged

> onset date; therefore, the fact that the impairments did not prevent the claimant from working at that time strongly suggests that it would not currently prevent work activity.

Tr. 23.

Accordingly, the Court finds the ALJ adequately reviewed the record, properly determined Plaintiff's RFC and that determination is supported by substantial evidence.

### B.     *Whether the ALJ properly assigned weight to the opinion of Dr. Lopez.*

Plaintiff argues that "the ALJ failed to properly evaluate the medical opinions expressed by Ms. Ross' treating psychiatrist, Dr. Lopez." Pl.'s Br. (Doc. 11) at 13. Plaintiff argues that "as Ms. Ross' treating physician, Dr. Lopez's medical opinions should have been entitled to the greatest weight and adopted herein. Therefore, the ALJ erred in not assigning greater weight to the diagnosis and opinion of Dr. Lopez." *Id.*

Defendant contends "[c]ontrary to Plaintiff assertion that Dr. Lopez was a treating physician, as the ALJ expressly noted in her decision (Tr. 22), there was no evidence that he was significantly involved in Plaintiff's treatment. Indeed, the record does not indicate that Dr. Lopez ever examined Plaintiff. Because nonexamining sources have no examining or treating relationship with a claimant, the weight the Commissioner will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. See 20 C.F.R. § 416.927(d)(3) (2011)." Def.'s Br. (Doc. 12) at 12.

Dr. Lopez completed a mental RFC assessment of Plaintiff on May 5, 2010. Dr.

12

Lopez estimated that Plaintiff had "marked" degree of impairment in four areas and "extreme" degree of impairment in all other areas. Tr. 371-73. Dr. Lopez then indicated Plaintiff "appears unable to function in a work environment," "has difficulty with interpersonal relationships, and is in a cycle in regards to her bipolar d/o," and "has a long [unable to read] of mental illness and her progress appears poor." Tr. 373.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips*, 357 F.3d at 1240 (quoting *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997) (internal citations omitted)). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillip*, 357 F.3d at 1240-41. The report of a treating physician also "may be discounted when it is not accompanied by objective medical evidence." *Edwards v. Sullivan,* 937 F.2d 580, 583 (11th Cir. 1991). "When electing to disregard the opinion of a treating physician, [an] ALJ must clearly articulate its reasons." *Phillips,* 357 F.3d at 1241. However, "[w]here the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence," a reviewing court may not "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 2008 WL 4962696, at *1 (11th Cir. Nov. 21, 2008).

In evaluating the opinion of Dr. Lopez, the ALJ gave two reasons for which "[g]reat weight was not assigned." Tr. 22. First, the ALJ noted "there is no evidence that Dr. Lopez ever personally provided treatment to the claimant and Ms. Carver [who also signed the form] only provided treatment to the claimant one time . . . It appears that most of the claimant's SpectraCare treatment was provided by Ms. Abshire who did not fill out this mental RFC form." Tr. 18, 22. Thus, the ALJ seems to conclude, and Defendant explicitly argues, that Dr. Lopez is not a treating physician.[7] Plaintiff argues that "Dr. Lopez observed Ms. Ross throughout the course of her treatment at South Central Alabama SpectraCare" and, thus, "[h]e is clearly a treating physician whose opinion and recommendations should have been given controlling weight." Pl.'s Br. (Doc. 11) at 10. However, Plaintiff does not provide any evidence to demonstrate Dr. Lopez had "an ongoing treatment relationship" with Plaintiff.[8]

Alternatively, even assuming Dr. Lopez was Plaintiff's treating physician, the ALJ provided "good cause" for not assigning his opinion substantial weight.[9] The ALJ noted

---

[7] A "treating source" (i.e., a treating physician) is a claimant's "own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, ***an ongoing treatment relationship with you.***" 20 C.F.R. § 404.1502 (emphasis added).

[8] *See, e.g., McSwain v. Bowen,* 814 F.2d 617, 619 (11th Cir. 1987) (stating that a doctor who examines a claimant on only one occasion is not considered a "treating physician").

[9] The Court also notes "[w]hile statements from treating physicians regarding the level of work a claimant can perform are important, they are not determinative because the ALJ has the ultimate responsibility to assess a claimant's residual functional capacity." *Carson v. Comm'r of Soc. Sec.,* 2008 WL 4962696, at *1 (11th Cir. Nov. 21, 2008).

that in completing a mental RFC form, Dr. Lopez failed to mention Plaintiff's alcohol abuse even though Plaintiff was receiving treatment for alcohol abuse during this period. Tr. 22. Finally, the ALJ concluded that Dr. Lopez's opinion "is inconsistent with the longitudinal evidence that shows the claimant's symptoms are controlled with medications." Tr. 22.

The ALJ properly considered and assigned "some weight" to Dr. Lopez's opinion regarding Plaintiff's mental impairments because Dr. Lopez failed to account for the effect of substance abuse on Plaintiff's impairments. *See Doughty v. Apfel,* 245 F.3d 1274, 1279-80 (11th Cir. 2001).[10] In this case, there is no evidence that Dr. Lopez considered whether Plaintiff's substance abuse was a "contributing factor" to Plaintiff's purported disability and, thus, the ALJ did not err in not assigning substantial weight to Dr. Lopez's opinion.[11]

---

[10] Generally, "once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then 'must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability.' 20 C.F.R. § 404.1535. The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability (the 'materiality determination') is whether the claimant would still be found disabled if he stopped using drugs or alcohol." *Id.* at 1279 (citing 20 C.F.R. § 404.1535(b)(1)). Moreover, "the claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination." *Id.* at 1280.

[11] *See e.g., Hunga v. Astrue*, 2010 WL 4977781, at *16 (E.D. Cal. Dec. 2, 2010) (finding "the ALJ did not err in considering [treating psychiatrist]'s failure to account for the effect of Plaintiff's substance abuse on his mental impairment. This is not a matter of the ALJ disregarding [treating physician]'s opinion, but rather a recognition by the ALJ of the responsibility under Social Security law to determine whether, absent drug or alcohol addiction,

### C. *Whether the ALJ accorded adequate weight to the opinion of Dr. Jordan.*

Plaintiff challenges the ALJ's decision to assign "great weight" to Dr. Jordan's medical opinion. Dr. Jordan performed a consultative examination of Plaintiff on June 7, 2010 and issued a Medical Source Statement of Ability to do Work-Related Activities (Mental). Tr. 374-80. Discussing Dr. Jordan's opinion, the ALJ noted:

> Dr. Jordan opined that with the claimant's alcohol use, she has marked impairment of her ability to interact appropriately with co-workers, marked impairment in her ability to respond appropriately to usual work situations and to changes in a routine work setting, and moderate restriction in her ability to interact appropriately with the public and with supervisors. (Exhibit 15f, page 6). Dr. Jordan noted that the claimant's symptoms would be less than marked in those areas if the claimant stopped abusing alcohol (Exhibit 15f, page 6). The opinion of Dr. Jordan was given great weight because it is consistent with the longitudinal medical evidence.

Tr. 23. Plaintiff argues that the ALJ improperly considered Dr. Jordan's opinion because "Dr. Jordan does not specifically state that Ms. Ross' limitations would become 'less than marked' if she stopped using alcohol. When asked if substance abuse contributed to any of Ms. Ross' limitations . . . Dr. Jordan provided comments [that] are largely illegible and in no way clear (Tr. 379)." Pl.'s Br. (Doc. 11) at 14.

---

the mental impairment would be disabling." (citing *Roberts v. Astrue*, 2009 WL 2488106, *2 (C.D. Cal. Aug. 12, 2009) (finding that the ALJ properly considered treating physician's opinion regarding mental impairments where treating psychiatrist failed to account for the effect of substance abuse on the underlying mental health problems)); *see also Douglas v. Astrue*, 2010 WL 3522299, at *15 (D.S.C. July 27, 2010) (finding "[t]he ALJ's measured consideration of [treating physician]'s focus on Plaintiff's abuse of marijuana and his failure to ever address her abuse of cocaine or alcohol was appropriate when considering the record as a whole.")

Defendant contends that "while Dr. Jordan's note was somewhat difficult to read, she apparently concluded that alcohol use canceled out or caused Plaintiff's diagnosis (Tr. 379)." Def.'s Br. (Doc. 12) at 9.[12]  Defendant also points out that "Dr. Jordan's conclusion as to the contribution of [Plaintiff's] alcohol abuse" is consistent with "providers [who] noted progress toward certain goals in treatment of Plaintiff's affective disorders (Tr. 321, 362-364); and Plaintiff reported improvement with treatment for her affective disorders (Tr. 322), denied psychiatric complaints (Tr. 359), and testified that she did not normally have difficulty being around others and had experienced only one panic attack (Tr. 43)." Def.'s Br. (Doc. 12) at 9.

When evaluating a consultative examiner's opinion, the ALJ considers the same factors as a treating physician; if the opinion is inconsistent with the record or the physician's notes, the ALJ may give it less weight. *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1160 (11th Cir. 2004) (evaluating consultative examiner's opinion in light of contemporaneous examination by another doctor).  In this case, the ALJ found the opinion of Dr. Jordan consistent with the overall objective medical evidence and, thus, articulated specific reasons for according Dr. Jordan's opinion significant weight. Tr. 22-23. *See, e.g.*, *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) ("It is not improper,

---

[12] Upon review, the Court finds that Dr. Jordan indicated "Alcohol use cancels out or causes diagnosis." Tr. 379.

however, for an ALJ to consider [reports of non-examining, non-treating physicians]—as long as the opinion of the treating physician is accorded proper weight.").

Thus, for the foregoing reasons, the Court finds the ALJ did not err in assigning "great weight" to Dr. Jordan's opinion.

## VI. CONCLUSION

The Court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 16th day of August, 2012.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE